UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARYL GRAY, ET AL. | CIVIL ACTION |
| VERSUS | NO. 23-1430 |
| PROGRESSIVE DIRECT INSURANCE COMPANY | SECTION "R" (4) |

**ORDER AND REASONS**

Before the Court is defendant Progressive Direct Insurance Company's ("Progressive") opposed[1] motion for partial summary judgment on choice of law.[2] For the following reasons, the Court grants the motion.

**I.   BACKGROUND**

The Court has reviewed the record on summary judgment and the undisputed facts are as follows. On March 5, 2021, an unknown vehicle struck Daryl Gray's 2018 Porsche from behind while it was stopped near the intersection of St. Anthony and Johnson Streets in New Orleans, Louisiana.[3] Plaintiffs William Robertson and Chaz Young, citizens of Louisiana, were passengers in the car. Gray's vehicle was covered by a Tennessee insurance

---

[1]   R. Doc. 18.
[2]   R. Doc. 17.
[3]   R. Doc. 17-5.

policy issued by defendant Progressive that included uninsured/underinsured motorist ("UM") coverage. The policy provided that "[a]ny disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your application as your residence."[4] Gray, who is a resident of both Tennessee and Louisiana, listed an address in Tennessee as his residence on his application for insurance with Progressive.[5] Gray had a Tennessee driver's license.[6] The car that was involved in the accident was garaged in Tennessee.[7] The Porsche is registered in Louisiana, but in a deposition Gray stated that this was a clerical mistake and that the car was supposed to be registered in Tennessee.[8] Gray also said that when he traveled to Louisiana, "a lot of times" he left his Porsche in Tennessee.[9]

Following the accident, plaintiffs filed a petition in state court against Progressive invoking the UM coverage in Gray's insurance policy.[10] Plaintiffs also seek to recover penalties under Louisiana's bad faith statutes, La. Rev.

---

| | |
|---|---|
| 4 | R. Doc. 17-3 at 36. |
| 5 | R. Doc. 17-4 at 1. |
| 6 | R. Doc. 17-6 at 4–5. |
| 7 | R. Doc. 17-3 at 2. |
| 8 | R. Doc. 17-6 at 11–12. |
| 9 | *Id.* at 13. |
| 10 | R. Doc. 1-1. |

Stats. §§ 22:1892 and 22:1973.[11] Progressive removed the case on the grounds of diversity jurisdiction.[12] Progressive now moves for summary judgment on the issue of choice of law, contending that Tennessee law should govern this dispute, and that, as a result, the Court must dismiss plaintiffs' claims for bad faith under Louisiana bad faith statutes, because Tennessee does not permit recovery under its bad faith statute when the underlying insurance policy provides automobile liability coverage.[13]

The Court considers the motion below.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness*

---

[11] R. Doc. 1-1 ¶¶ 16–17.
[12] R. Doc. 1. ¶ 22.
[13] R. Doc. 17.

*Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party must put forth evidence that would "entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)

(internal quotation marks omitted)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

Defendant contends that Tennessee law should govern this dispute because (1) the insurance policy contains a choice of law provision, and (2) even if the choice of law provision were unenforceable, the Court should apply Tennessee law under Louisiana's general conflict of laws statutes, La. Civ. Code arts. 3515 and 3537.

Because the Court sits in diversity, it applies Louisiana conflict of laws rules. *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). As to the choice of law provision, Louisiana law provides that "where the parties stipulate to the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justify not honoring the contract as written." *Tucker v. Thornton*, 363 So. 3d 1276, 1280 (La. App. 5 Cir. 2023). But Louisiana Revised Statute section 22:868 provides that "[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . . [r]equiring it to be construed according to the laws of any other state." Other courts "have declined to enforce choice of law provisions in insurance contracts due to the public policy concern expressed in Section 22:868(A)(1)." *Al Copeland Invs., LLC v. First Specialty Ins.*

6

*Corp.*, 2017 WL 2831689, at *11 (E.D. La. June 29, 2017), *aff'd sub nom. Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540 (5th Cir. 2018); *see Town of Vinton v. Certain Underwriters at Lloyds London*, 2023 WL 8655270, at *9 (W.D. La. Dec. 14, 2023) (holding that a commercial insurance policy's choice of law provision was prohibited under La. Rev. Stat. § 22:868(A)(1)); *Chennault Int'l Airport Auth. v. Starr Surplus Lines Ins. Co.*, 2023 U.S. Dist. LEXIS 172004, at *4 (W.D. La. Sep. 26, 2023) (invalidating a surplus lines insurance policy's choice of law provision under La. Rev. Stat. § 22:868(A)(1)). La. Rev. Stat. § 22:868(A)(1) applies when there is no issue of material fact regarding where the policy was issued and delivered. *See Thomas v. Reliance Standard Life Ins. Co.*, 136 F.3d 138 (5th Cir. 1998) (declining to apply the predecessor to La. R.S. 22:868 when the claimant had not raised an issue of fact over the policy being issued and delivered in Massachusetts). While the insurance policy, labeled "Tennessee Auto Policy," was issued in Tennessee, the policyholder, Gray, states that he digitally signed the policy in Louisiana.[14] There is no evidence on how or where the policy was delivered, although Gray's address in the policy is in Tennessee. Additionally, because Gray stated on his application that he

---

[14] R. Doc. 18-1 at 2.

7

resided in Tennessee,[15] and the Porsche was garaged in Memphis,[16] the facts do not indicate that the automobile insurance policy was intended to cover subjects located or resident in Louisiana. Nevertheless, the Court need not resolve these issues to determine La. Rev. Stat. § 22:868's applicability, because the Court reaches the same result under the choice of law provision in the insurance policy and the conflict of laws analysis under Louisiana law.

Under Louisiana's general conflict of law statutes, La. Civ. Code arts. 3515 and 3537, the Court must apply "the law of the state whose policies would be most seriously impaired if its law were not applied." In *Champagne v. Ward*, the Louisiana Supreme Court laid out the appropriate conflict of law analysis for UM policy litigation involving multiple states. The Court must first identify the relevant policies of the two states and determine if they differ. *Champagne v. Ward*, 893 So.2d 773, 786 (La. 2005). In this case, there is a conflict between the laws of the states of Louisiana and Tennessee, because Louisiana's bad faith insurance penalty statutes apply to automotive liability policies, while Tennessee's bad faith insurance penalty statute does not. *Compare* La. Rev. Stats. Ann. §§ 22:1892, 22:1973, *with Tenn. Farmers Mut. Ins. Co. v. Cherry*, 374 S.W.2d 371, 394 (Tenn. 1964),

---

[15] R. Doc. 17-4 at 1.
[16] R. Doc. 17-3 at 2.

*and Giles v. Geico Gen. Ins. Co.*, 643 S.W.3d 171, 176-84 (Tenn. App. 2021) (reviewing the history of Tennessee Supreme Court jurisprudence on the applicability of T.C.A. § 56-7-105 to automobile liability insurance policies and concluding that the statute does not apply to them).

Next, the Court must determine which state's policies would be most seriously impacted if its laws were not applied. To do so, the Court looks to the "strength and pertinence of the relevant policies . . . in light of the factors set forth in [the relevant conflict of law] Civil Code articles." *Champagne*, 893 So.2d at 786. These articles identify the following factors:

- "the relationship of each state to the parties and the dispute," La. Civ. Code art. 3515(1);

- "the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state," La. Civ. Code art. 3515(2);

- "the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the

9

contract, and the place of domicile, habitual residence, or business of the parties," La. Civ. Code art. 3537(1);

- "the nature, type, and purpose of the contract," La. Civ. Code art. 3537(2); and
- "the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other," La. Civ. Code art. 3537(3).

The Court finds that both the statutory factors and the relevant case law require the application of Tennessee law to this dispute. In *Champagne*, the Louisiana Supreme Court noted that the public interests between the two conflicting states—Louisiana and Mississippi—in dealing with UM matters were "profound." *Champagne*, 893 So.2d at 788. The *Champagne* court held that Mississippi had a more substantial interest in the application of its laws because "[t]he application of Louisiana law to the insurance policy would result in the abrogation of a Mississippi contract." *Id.* at 789. The Court recognized "the purpose of [Louisiana's] UM legislation [of] promot[ing] full recovery for innocent tort victims," *Id.* at 788, and that the accident occurred in Louisiana, defendant was a Louisiana resident, and the policy was issued to the defendant in Louisiana. *Id.* at 789. It also

10

acknowledged that Louisiana had an interest in the cost of medical care and in the involvement of its judicial and public safety systems. *Id.* at 788. But the court determined that Mississippi's interest, which derived from its "interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof," were ultimately more substantial. *Id.* at 788. "The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose." *Id.* Further, the Court noted that the policy provision at issue was within the contemplation of the contracting parties, and the premium was based on this coverage reduction provision, which was permitted by Mississippi law. *Id.* at 788–789. The case's Mississippi contacts included that the plaintiff was a resident of Mississippi, Mississippi was where the contract was negotiated and formed, the covered vehicle was garaged in Mississippi, and the insurance contract was a Mississippi contract. *Id.* at 789.

The Fifth Circuit Court of Appeals reached the same result on similar facts in *Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609 (5th Cir. 2006). There, the court decided that Mississippi—"the state where the insurance policy was negotiated and formed, where the insured vehicle was licensed and garaged, and where [the plaintiff and policyholder] had dual

11

citizenship"—had a closer relationship to the dispute and a greater interest in having its law applied. *Abraham*, 465 F.3d at 614. Louisiana's connections of dual residency, the accident's occurring in Louisiana, the involvement of Louisiana courts, and the victim's medical treatment in Louisiana did not outweigh Mississippi's relationship to the case. *Id.* at 612.

Similarly, the Louisiana Fourth Circuit Court of Appeal held that Ohio had a more substantial interest after reviewing each state's connections to the case. *Collins v. Downes*, 83 So. 3d 1177, 1183 (La. App. 4 Cir 2012). There, plaintiff sought to recover under a UM policy after being rear-ended. *Id.* at 1178. Even though the accident occurred in Louisiana, the plaintiff, defendant, and car owner were Louisiana residents, and the insured car was primarily garaged in Louisiana, Ohio had greater contacts because the car owner's UM policy was negotiated, formed, issued, and delivered in Ohio, the car was registered in Ohio, the insurance policy contained an Ohio address, which the premiums were based on, and the policy contained provisions permitted under Ohio law. *Id.* at 1182–83.

On the facts here, the Court likewise finds that the law of the state where the contract was issued applies to the question in dispute. As in *Champagne*, Louisiana's interest is rooted in "the purpose of [Louisiana's] UM legislation," which is "to promote full recovery for innocent tort victims."

*Champagne*, 893 So.2d at 788. Tennessee's interest is "in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof." *Id.*

Louisiana's connections to this dispute include that the plaintiffs are Louisiana residents, the accident and following medical treatment occurred in Louisiana, the policyholder digitally signed the insurance contract in Louisiana, and the policyholder has a residence and a branch of his law practice in Louisiana.

But Tennessee's interests in the regulation of the insurance business and the insurance policies issued pursuant to its laws trump Louisiana's interests here. Gray, the policyholder and the driver in the accident, has stronger ties to Tennessee than Louisiana and appears to be domiciled in Tennessee. Gray resides at a home in Tennessee, has lived in Tennessee for most of his life, and states that he "always maintained a residence in Memphis."[17] He is barred in and has owned a law practice in Tennessee for the past 15 years,[18] has always had a Tennessee driver's license,[19] and votes exclusively in Tennessee.[20] Most of his mail and bills, even those that are

---

[17] R. Doc. 17-6 at 6–7; 9.
[18] *Id.* at 8.
[19] *Id.* at 4–5.
[20] *Id.* at 9–10.

13

accrued in Louisiana, are sent to him in Tennessee.[21] Often, Gray left his Porsche in Tennessee when he traveled to Louisiana for extended periods.[22] The Porsche was supposed to be registered in Tennessee. The policy at issue was based on Gray's and the vehicle's connection to Tennessee. In verified statements in his insurance application,[23] Gray gave a Tennessee address as his residence,[24] and stated that all six insured vehicles, including the Porsche involved in the accident, were garaged in Tennessee.[25] The policy was issued to insure cars garaged in Tennessee to a man living in Tennessee.[26] Further, the insurance policy was issued in Tennessee, and it is labeled "Tennessee Auto Policy." [27]

Application of Tennessee law is consistent with the contracting parties' reasonable expectations. Although the choice of law clause is not dispositive, it is indicative of the signatory parties' expectations. The insurance contract provided, "Any disputes as to the coverage provided . . . shall be governed by the law of the state listed on your application as your residence."[28] Gray

---

[21]   *Id.* at 10.
[22]   *Id.* at 13.
[23]   R. Doc. 17-4 at 5.
[24]   *Id.* at 1.
[25]   R. Doc. 17-3 at 2.
[26]   *Id.* at 1–3, 6, 10.
[27]   *Id.* at 6, 10.
[28]   *Id.* at 36.

listed his Tennessee address as his residence on the application, indicating that he understood Tennessee law to apply. Further, Gray acknowledged that the underwriting of the policy risk would be based on statements he made in his application. The policy stated that it was "issued in reliance upon the information provided on your insurance application."[29] The premium risk is affected by the insurer's exposure, *vel non*, to state penalty statutes. Because of Gray's representations, defendant justifiably expected that Tennessee law would apply in any coverage dispute. Additionally, because Gray's Porsche was garaged in Tennessee, and he expressly sought out and applied for a Tennessee policy, he could reasonably expect that Tennessee law would govern in a dispute.

Similar to *Champagne*, the foreign state has a more substantial interest in the uniform application of its laws given its connections to the dispute. As in *Champagne*, despite the accident's occurring in Louisiana, the state of more significance is the other state where the contract was issued, the insured car was garaged, the insured resided, and with which the UM policy was specifically identified. In all, the connections of the policyholder, his Porsche, and the insurance policy itself to Tennessee outweigh the connections of the policyholder and the plaintiffs to Louisiana. Applying

---

[29] *Id.*

15

Louisiana law would effectively abrogate a Tennessee contract. This Court will respect Tennessee's genuine interest in the integrity of its insurance contracts, which was recognized as a "substantial and real interest" interest in *Champagne*. 893 So.2d at 788.

Because Tennessee has a more substantial policy interest in the uniform application of its laws in this case, and because Tennessee's policies would be more seriously impaired if its law were not applied, the Court will apply Tennessee law to this dispute. Under Tennessee law, plaintiff's claim for penalties, attorney fees, costs, and damages under Louisiana Revised Statutes sections 22:1892 and 22:1973 must be dismissed. These Louisiana causes of action cannot be maintained under Tennessee law. Tennessee's bad faith penalty statute, Tenn. Code Ann. § 56-1105, does not apply to automotive insurance policies. *See Cherry*, 374 S.W.2d at 372; *Giles*, 643 S.W.3d at 184.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for partial summary judgment on the issue of choice of law. Plaintiff's claims for penalties, attorney fees, costs, and damages under Louisiana Revised Statutes sections 22:1892 and 22:1973 are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __22nd__ day of August, 2024.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE